IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION, for the use and benefit of: BUILDEX, INC.,

Plaintiff,

v.

WESTERN READY-MIX, INC. and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

Defendants.

Case No. 14-4037-JWL

**MEMORANDUM AND ORDER**

This matter presently comes before the Court on defendant Western Ready-Mix Inc.'s motion to dismiss for lack of personal jurisdiction (Doc. # 3). For the reasons set forth below, the Court **denies** the motion.

## I. Background

Plaintiff Missouri Highways and Transportation Commission brought this case in state court on behalf of Buildex, Inc ("Buildex"). Plaintiff Buildex alleges in its petition that Defendant Western Ready-Mix, Inc. ("Western") and Buildex entered into a contract for Buildex to supply aggregate for the I-70 Blanchette Bridge Project ("the

Project") and that Western refused to pay two invoices, totaling $65,309.86. Buildex has brought claims against Western for breach of contract and quantum meruit (as well as a claim against the surety on its bond). Defendants removed the case from state court on the basis of diversity jurisdiction, and Western filed a motion to dismiss for lack of personal jurisdiction.[1]

## II. Governing Standards

The plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. *See OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F. 3d 1086, 1091 (10th Cir. 1998). The allegations in the complaint are taken as true to the extent that they are undisputed by defendant's affidavits. *See Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citations omitted).

In *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159 (10th Cir. 2011), the Tenth Circuit reaffirmed the following standards governing this Court's analysis of the issue of personal jurisdiction over a defendant:

> Where a federal lawsuit is based on diversity of citizenship, the court's jurisdiction over a nonresident defendant is determined by the law of the forum state. The party seeking to establish personal jurisdiction

[1]Buildex states that Western's motion was untimely filed, but it has not argued for denial of the motion on that basis. At any rate, the motion actually appears to be timely, as the record of the case filed with the notice of removal includes an extension granted to Western in the state court.

over a foreign defendant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment. Kansas's long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process principles. Consequently, this court need not conduct a statutory analysis apart from the due process analysis.

The due process analysis is also two-fold: First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he purposefully availed himself of the protections or benefits of the state's laws and should reasonably anticipate being haled into court there. Although agreements alone are likely to be insufficient to establish minimum contacts, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. The court must examine the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.

If [the defendant] is found to have the requisite minimum contacts with Kansas, then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him does not offend traditional notions of fair play and substantial justice. [The defendant] bears the burden at this stage to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. We consider the following five factors . . . in deciding whether the exercise of jurisdiction would be fair:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

The reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.

*See id.* at 1166-67 (citations and internal quotations omitted).

> Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state. . . . The purpose of this requirement is to ensure that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous or attenuated contacts, or of the unilateral activity of another party or a third person.

*See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (citations and internal quotations omitted).

## III. <u>Analysis</u>

In support of its motion, Western relies on the following facts: Western is a Missouri corporation with its principal place of business in Missouri, and it is not licensed to do business in the State of Kansas. Western has never performed a project in the State of Kansas. The quotation from Buildex stated that Buildex would provide the lightweight aggregate from its quarry in Missouri. No employee of Western ever traveled to Kansas to meet Buildex, and all meetings that took place between Western and Buildex concerning the Project occurred in Missouri.

In opposition to the motion, Buildex relies on the following facts, which Western does not dispute: Buildex is a Kansas corporation with its headquarters in Ottawa, Kansas, from which it handles all management, scheduling, sales, and contract performance. Prior to October 6, 2011, Western contacted Buildex in Kansas by telephone and by e-mail and sought quotations for the Project. Buildex submitted to Western a written proposal, and Western and Buildex exchanged numerous phone calls and approximately 40 e-mails concerning Buildex's offer. Western accepted Buildex's

offer on February 11, 2013, by executing the written contract between the parties and forwarding it to Buildex's headquarters in Kansas. After the contract had been executed, Western made telephone calls and sent e-mails to Buildex in Kansas for the purchase of additional aggregate. Western and Buildex exchanged numerous phone calls, faxes, and e-mails in connection with carrying out the provisions of the contract, and all management and administration of the contract was performed by Buildex in its headquarters in Kansas. Buildex sent numerous invoices from Kansas to Western for the aggregate, and Western sent payments on those invoices to Buildex in Kansas. Western's working relationship with Buildex in Kansas lasted from before October 6, 2011, until October 17, 2013.

Based on these facts, the Court finds that Western had sufficient minimum contacts with the State of Kansas to support the exercise of personal jurisdiction over it. Western reached out beyond the borders of Missouri and purposefully sought out Buildex to enter into a relationship with a resident of the Kansas. Even after the contract was executed, Western negotiated for more aggregate from Buildex, and it continued its contractual relationship and obligations with Buildex for over two years, which relationship included making telephone calls and sending e-mails and payments to Kansas. Moreover, Buildex managed and administrated the contract from its headquarters in Ottawa, Kansas. *See, e.g., Marketing Group, Inc. v. Success Dev. Int'l, Inc.*, 41 F. Supp. 2d 1241, 1244 (D. Kan. 1999) (sufficient contacts with Kansas included plaintiff's management from its Kansas office). Western's contacts with Kansas were

not merely random or fortuitous; it reached out and purposefully entered into an ongoing relationship with the State of Kansas.[2]

Having established that Western had sufficient minimum contacts with the State of Kansas, this Court would ordinarily turn to the second prong in the due process analysis, namely whether the defendant has met its burden to show that exercising jurisdiction over it would offend traditional notions of fair play and substantial justice. Western has offered no argument on that specific issue, however. Accordingly, Western has not met its burden with respect to the second prong, and there is no basis to conclude that the exercise of personal jurisdiction would offend due process despite the presence of sufficient minimum contacts with the State of Kansas. The Court thus denies Western's motion to dismiss.

IT IS THEREFORE ORDERED BY THE COURT THAT Defendant Western's motion to dismiss for lack of personal jurisdiction (Doc. # 3) is **denied**.

IT IS SO ORDERED.

Dated this 11th day of July, 2014, in Kansas City, Kansas.

---

[2]The number and character of the contacts here distinguish this case from *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849 (1974), on which Western heavily relies (and which is not binding on this Court at any rate). *See id.* at 854-55 (no personal jurisdiction where only contacts were a telephone call to place an order and the fact that payment was to be made to Kansas; in effect, plaintiff "merely acted as a clearing-house for what was essentially an out-of-state transaction.").

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge